**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CLEO SANDERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 11 C 7625** |
| **v.** ) | |
| ) | **Magistrate Judge Morton Denlow** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Cleo Sanders ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking summary reversal or remand of the final decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI"). Claimant raises the following issues in support of his motion: (1) whether the ALJ erred in denying Claimant's request for a supplemental consultative evaluation; and (2) whether the ALJ erred in evaluating the evidence from Roseland Mental Health Center. For the following reasons, the Court denies Claimant's motion for summary reversal or remand and grants the Commissioner's motion to affirm the Commissioner's decision.

## I. BACKGROUND FACTS

### A.    Procedural History

Claimant filed for SSI on July 25, 2006, initially alleging a disability onset date of August 20, 1998. R. 127-29. Claimant later amended his alleged onset date to July 25, 2006,

the date of his filing.  R.116-19.  The Social Security Administration ("SSA") originally denied Claimant's application on September 7, 2006, and again upon reconsideration on October 18, 2006.  R. 66-67.  On October 23, 2006, Claimant requested a hearing before an ALJ.  R. 74.

On September 11, 2008, Administrative Law Judge Judith S. Goodie ("ALJ") presided over a hearing at which Claimant appeared with his attorney, Deborah Spector.  R. 22-65. Claimant and a vocational expert, Pamela Tucker, testified at the hearing.  *Id.*  Claimant requested a post hearing consultative psychological evaluation on September 19, 2008.  R. 193-97.  The ALJ denied this request.  R. 10.

On October 31, 2008, the ALJ rendered a decision finding Claimant not disabled under the Social Security Act.  R. 10-21.  In that decision, the ALJ denied Claimant's request for an additional evaluation, finding that Claimant had not shown cause for further development of the medical evidence.  *Id.*  Specifically, the ALJ found that Claimant has the "residual functioning capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to perform simple, routine, repetitive tasks, with only occasional interaction with the general public, supervisors, and co-workers, and with no more than occasional changes in work routine and setting, and occasional kneeling, crawling, and stairs, with the allowance for being off-task 10% of the time with one absence per month, and with no strict production quotas."  R. 17.

Claimant then filed for review of the ALJ's decision to the Appeals Council.  R. 120-21.  On May 27, 2011, the Appeals Council denied review, making the ALJ's decision the

final decision of the Commissioner.  R. 1-6.  Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).  The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. 636(c).  Dkt. 10.  The Court held oral arguments on July 9, 2012.

## B.     Hearing Testimony

### 1.     Cleo Sanders – Claimant

At the time of the hearing, Claimant was fifty-three years old and single with one adult child.  R. 25, 49.  Claimant completed high school and received a certificate for locksmith training.  R. 31.  His past relevant work experience included maintenance worker and locksmith.  R. 19, 31-32.  Additionally, Claimant's prior work included driver, locksmith, nursing home security guard, telemarketer, and part-time worker at UPS.  R. 32-33.  In 2000, the last year in which Claimant worked, UPS terminated him because of a dispute with his supervisor and he lost his job as a nursing home security guard after a resident escaped.  *Id.*

Claimant testified that he previously lived in a boarding house for three months, and that at the time of the hearing was living with his friend, a senior citizen.  R. 35.  While Claimant got along fine with his previous and current roommates, he chooses to keep to himself.  R. 36-37.  Claimant testified that his current roommate does most of the cooking, the laundry, and the shopping.  R. 37.  He does not have a driver's license due to a DWI, but uses public transportation.  R. 37-38.  He spends most of his time at home watching television, and he leaves the house once or twice per week.  R. 38.

During the hearing, Claimant testified he cannot work because of his "mind-set" and memory problems. R. 41. His current medication, Cymbalta, helps him sleep and focus better. R. 41, 44. Even so, he thinks his mind would not allow him to work. R. 56.

Claimant testified he tore a ligament in his right knee in the 1990s, but he never received medical treatment for this injury. R. 43. Claimant described his difficulty climbing stairs, walking distances greater than a block, and standing after prolonged sitting, though he rides his bike twice per week. R. 43-45. He said he can stand for fifteen to twenty minutes and sit for thirty minutes at a time. R. 46. He thought he could lift twenty-five to thirty pounds. *Id.*

Claimant acknowledged that he was drinking a pint of whiskey and a 22-ounce beer daily in 2006. R. 38. Though Claimant said it was possible he did not tell his therapist about drinking right away, he told his therapist he planned to quit and did so in April 2008. R. 39-40, 53. He has never attended alcohol rehabilitation, but he attends therapy regularly. R. 39-40. All of his alcohol screenings at the Board of Health have been negative. R. 53.

Among other things, the combination of his separation from his wife, a death in the family, and the failure of his locksmith business caused him to start feeling depressed in the 1990s. R. 52. Claimant leaves his home only for therapy because he does not want to interact with other people. R.51. He said that while regular therapy, biking, quitting drinking, and receiving treatment has made things a little better, he still feels hopeless and as though his life is "on hold." R. 52, 55-56.

## 2. Pamela Tucker – Vocational Expert ("VE")

A vocational expert, Pamela Tucker, classified Claimant's past work as maintenance worker as medium, semi-skilled work.  R. 57.  The VE described Claimant's past work as a telemarketer as sedentary, semi-skilled work and his work as a locksmith as light, semi-skilled work.  *Id.*  Finally, the VE categorized his experience as a dock worker as heavy and unskilled work.  *Id.*  She determined that his work as a security guard and laborer at UPS were not substantial gainful activity.  *Id.*

While questioning the VE, the ALJ described a hypothetical person of the same age, educational background, and work experience as Claimant, with the functional capacity to: complete simple routine, repetitive tasks; have only occasional interaction with the general public, supervisors, and co-workers; have only occasional changes in work routine and setting; and only occasionally kneel, crawl, or climb stairs.  R. 58.  The VE testified that this person could perform Claimant's past work as a dock worker, which is heavy and unskilled work.  *Id.*  That person could also perform the jobs of: laundry worker, of which there are 4000; dishwasher, of which there are 18,000; and hand packer, of which there are 10,000.  R. 58-59.  At the light level, the person would be able to perform the work of: assembler, of which there are 3000; light packer, of which there are 7000; and light laundry worker, of which there are 3200.  R. 59.

The ALJ then added the additional limitation that the person would be expected to be off task ten percent of the time.  R. 60.  The VE responded that the off-task limitation would eliminate the hand packer position, though later testimony indicates that it would also eliminate the assembler and packer positions.  R. 60-61.

Finally, the ALJ added to her hypothetical that the person could not perform with a strict production quota. R. 62. This restriction would eliminate any type of production jobs (such as a hand packer, assembler, and light packer) but the person could still perform the work of a laundry worker and dishwasher. *Id.*

Upon questioning by Claimant's attorney, the VE testified that the job base would be eroded, depending on what the essential functions of the job were, if the hypothetical person could follow and understand instructions but not retain them. R. 61. If the hypothetical person had difficulty handling regular work pressure and stress, all jobs would be eliminated. *Id.*

## C.    Medical Evidence

### 1.  Dr. Kenneth M. Levitan. M.D., S.C. – State Agency Consultative Physician

At the request of the Bureau of Disability Determination Services, Dr. Kenneth Levitan, M.D., S.C. ("Dr. Levitan"), conducted a psychiatric consultative examination of Claimant on August 21, 2006. R. 203-05. Dr. Levitan noted that Claimant was sad, lacked energy, and had a careful gait. R. 203. He observed that Claimant smelled like alcohol. *Id.* Claimant originally denied, but later admitted to, a history of drug and alcohol use. R. 203-04.

Dr. Levitan found that Claimant has average intelligence and fairly good recent memory, though he has some difficulty concentrating. R. 205. He diagnosed Claimant with chronic depression, chronic alcoholism, past chronic drug abuse, non-specific personality disorder, and status post injured right knee with residual difficulties. *Id.* Dr. Levitan

indicated he could not rule out a mild organic brain syndrome secondary to chronic alcohol abuse, or mild acute intoxication from alcohol. *Id.* Finally, Dr. Levitan opined that Claimant can perform simple and routine tasks and can communicate with co-workers and a supervisor. However, Claimant would have "difficulty handling regular work pressures and stress." *Id.* While Dr. Levitan found that Claimant could understand and follow instructions, "he could not be relied on to retain them." *Id.*

### 2. Dr. John Tomassetti, PhD. – State Agency Reviewer

On August 31, 2006, Dr. John Tomassetti, PhD. ("Dr. Tomassetti"), reviewed Claimant's medical record and prepared a Psychiatric Review Technique form. R. 206-19. Dr. Tomassetti diagnosed alcohol induced mood disorder and mild alcohol intoxication. R. 207, 214. Functionally, Dr. Tomassetti found Claimant has mild restrictions in activities of daily living, moderate difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, or pace. R. 216.

On the same day, Dr. Tomassetti prepared a Mental Residual Functional Capacity Assessment Form. R. 220-23. He opined that Claimant has some limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption. R. 220-21. He noted that Claimant has moderate limitations in his ability to carry out detailed instructions, but that Claimant was not significantly limited in the ability to carry out very short and simple instructions. R. 220-23. On October 16th and 17th, 2006, Dr. Hugh Hallett and Dr. Carl Hermsmeyer, respectively, affirmed Dr. Tomassetti's opinions. R. 224-25.

### 3.   Chicago Department of Public Health, Roseland Mental Health Center

The record contains treatment notes from the Chicago Department of Public Health Roseland Mental Health Center ("Roseland") where Claimant was an active outpatient from March 7, 2008 through August 6, 2008.  R. 228-83.

### a.      Vicki L. Todd, M.S., QMHP – Claimant's Therapist

Claimant initially sought treatment at Roseland because he felt depressed, it was difficult for him to leave his house, and he did not want to be around people.  R. 229.  On March 31, 2008, Claimant's therapist, Vicki L. Todd, M.S., QMHP ("Ms. Todd"), diagnosed Claimant with major depressive disorder, noting that there was no evidence of a substance abuse problem and that Claimant denied any alcoholism.  R. 231, 238.  Ms. Todd assessed Claimant's global assessment of functioning ("GAF") score as 60.  R. 237.  Ms. Todd observed that Claimant was oriented times three and there was no evidence of a formal thought disorder.  R. 232.  She noted Claimant's ability to follow through on commitments. R. 237.  In a letter dated May 2, 2008, Ms. Todd wrote that Claimant's symptoms included anaerobia, feelings of hopelessness and helplessness, feeling sad a lot of the time, and difficulty sleeping.  R. 229.

### b.      Dr. John W. Jones, M.D.

On June 2, 2008, Dr. John W. Jones, M.D. ("Dr. Jones"), completed a psychiatric evaluation of Claimant at Roseland.  R. 243.  Dr. Jones found that Claimant reported "mood symptoms of sadness, anxiety, changes in sleep patterns, and hopelessness" and anhediona. *Id.*  Dr. Jones prescribed Cymbalta for Claimant.  R. 246.

### c. Miscellaneous Progress Notes

A report dated June 18, 2008 indicates that Claimant began attending a Mind/Body group and demonstrated an interest in exercise. R. 271. He continued to feel depressed on July 2, 2008, though he said working out made him feel better. R. 267. On July 16, 2008, Claimant stated his medications helped him to sleep better. R. 262. On July 23, 2008, Claimant tested negative for alcohol. R. 249-50. Notes indicate that group therapy improved Claimant's mood and other symptoms, which made him feel "slightly better." R. 258, 260. The progress notes dated July 30, 2008 indicate that Claimant attended and appropriately participated in group therapy discussions, and Claimant was in "good spirits and dedicated to his workout." R. 256.

An August 6, 2008, letter from Ms. Todd indicates that Claimant continued to attend Mind-Body group weekly and Dr. Jones treated him regularly for psychiatric evaluation and administration of his medication. R. 255. Ms. Todd noted that Claimant was co-operative and stable. *Id.* Finally, on August 22, 2008, Claimant again tested negative for alcohol. R. 284.

## D. The ALJ's Decision – October 31, 2008

Following a hearing and review of the medical evidence, the ALJ rendered an unfavorable decision upholding denial of Claimant's application for SSI. R. 10-21. The ALJ first denied Claimant's request for a post hearing consultative psychological evaluation because Claimant did not show cause for further development of the medical evidence and there was "ample evidence of [C]laimant's recent and current mental status from treating

sources." R. 10. The ALJ evaluated Claimant's application under the required five-step sequential analysis.

At step one, the ALJ found Claimant has not engaged in substantial gainful activity since July 25, 2006, the application date and alleged onset date. R. 12. At step two, the ALJ found Claimant has the severe impairments of major depressive disorder and chronic alcoholism, which has been in remission since July 2008. *Id.* At step three, the ALJ found Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Sbpt. P, App. 1. R. 13-17.

The ALJ then proceeded to consider Claimant's residual functioning capacity ("RFC")[1] and found Claimant capable of performing a full range of work at all exertional levels but with the following nonexertional limitations: he is able to perform simple, routine, repetitive tasks; he can have only occasional interaction with the general public, supervisors, and co-workers; he can have no more than occasional changes in work routine and setting; he can only occasionally kneel, crawl, and climb stairs; he must have an allowance for being off-task 10% of the time with one absence per month; and he cannot have a strict production quota. R. 17.

In assessing Claimant's RFC, the ALJ considered all of Claimant's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the

---

[1] The residual functioning capacity is the most that a claimant can do despite the effects of his impairments. 20 C.F.R. § 404.1545(a).

objective medical evidence and other evidence." R. 17. The ALJ found that Claimant's impairments could reasonably be expected to cause the alleged symptoms, but that Claimant's statements concerning the "intensity, persistence and limiting effects of [those] symptoms are not credible." R. 17-18. The ALJ found Claimant not credible regarding alcoholism, noting conflicting statements made to doctors. R. 18. Further, the ALJ noted that Claimant's condition has improved since he began regular treatment at Roseland in March 2008. *Id.*

The ALJ gave substantial weight to Dr. Tomassetti's findings in part because she found that Claimant is no longer impaired by alcohol, which he was at the time of his meeting with Dr. Levitan. R. 19. Thus, the ALJ gave more weight to Dr. Tomassetti's finding that Claimant was not significantly limited in his ability to carry out very short and simple instructions than to Dr. Levitan's finding that Claimant "could not be relied upon to retain instructions." *Id.*

At step four, the ALJ found that Claimant is unable to perform any past relevant work. *Id.* At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant could perform. *Id.* Thus, the ALJ found Claimant not disabled under the Social Security Act. R. 20.

## II. LEGAL STANDARDS

### A.    Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by

an ALJ becomes the Commission's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Id.*; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Id.*

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish he is under a "disability" as defined by the Social Security Act.  *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009).  "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work.  *Id*.  Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ must determine whether other jobs exist in the economy that the claimant can perform.  *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

### III.  DISCUSSION

Claimant raises the following issues in support of his motion for summary reversal or remand of the Commissioner's decision: (1) whether the ALJ erred in denying Claimant's request for a supplemental consultative examination; and (2) whether the ALJ erred in her evaluation of the evidence from Roseland Mental Health Center ("Roseland"). The Court addresses each in turn and concludes that substantial evidence supports the ALJ's decision.

**A. The ALJ Reasonably Determined That The Record Contained Sufficient Medical Evidence And An Additional Consultative Examination Was Not Necessary.**

Claimant's consultative examination ("CE") was in August 2006, two years prior to the hearing. Claimant argues that the ALJ was required to order a supplemental CE because substantial changes took place in Claimant's condition during the two years between the first evaluation and the hearing. Additionally, Claimant contends Dr. Levitan's rule out diagnosis of mild organic brain syndrome secondary to chronic alcohol abuse meant that Dr. Levitan could not determine whether Claimant had an organic brain syndrome (because Claimant was intoxicated at the time of the evaluation) and therefore a supplemental evaluation is necessary. The Court finds that the medical record was not inadequate and the ALJ exercised reasonable judgment in turning down Claimant's request for a supplemental CE.

A claimant bears the burden of presenting evidence of mental impairment. 20 C.F.R. § 404.1514; *McLachlan v. Barnhart*, No. 03 C 2297, 2004 WL 2036294, *12 (N.D. Ill. Sept. 8, 2004). However, the ALJ has a duty to fully and fairly develop a Claimant's medical record. *McLachlan,* 2004 WL 2036294, at *12. Regarding the duty to develop the record, if "the medical record includes substantial evidence sufficient to support the ALJ's findings, the ALJ need not pursue additional relevant evidence." *Hunt v. Astrue*, No. 10 C 2874, 2012 WL 1044744, *13 (N.D. Ill. Mar. 26, 2012) (citing *Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999)). Further, "how much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment." *Id.* (quoting *Kendrick v.*

*Shalala*, 998 F.2d 455, 458 (7th Cir. 1993)); *see also Shipley v. Astrue*, No. 10 C 1311-DML-TWP, 2012 WL 845548, at *3 (S.D. Ind. Mar. 12, 2012) ("As the Seventh Circuit noted in *Kendrick*, reasonable minds can differ on 'how much is enough,' so the judiciary 'accept[s] reasonable assessments by administrative officials about how much evidence is enough.'" (quoting *Kendrick*, 998 F.2d at 457)).

Regarding CEs in particular, an ALJ should order an additional CE if a claimant's medical evidence about an alleged impairment is insufficient. 20 C.F.R. § 416.917. It is also appropriate, indeed sometimes required, when "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the] impairment is not established." 20 C.F.R. § 404.1519a(b)(4); *see also Clayborne v. Astrue*, No. 06 C 6380, 2007 WL 6123191, *4 (N.D. Ill. Nov. 9, 2007). The ALJ need not order a CE simply due to a lack of diagnosis. *Carroll v. Barnhart*, 291 F. Supp. 2d 783, 794 (N.D. Ill. 2003).

Though two years passed between Claimant's meeting with Dr. Levitan and the hearing, it is not as though the record is void of evidence from this period. The ALJ reasonably relied on the Roseland progress notes as "ample evidence of [the claimant's] recent and current mental status from treating sources." R. 10. Medical evidence from Roseland includes treatment notes from Ms. Todd, Claimant's therapist, miscellaneous progress notes reflecting Claimant's participation in various treatment programs, and Dr. Jones's psychiatric evaluation of Claimant in June 2008. R. 229-46; 254-83. Those progress notes do in fact indicate a change in Claimant's condition since his last consultative

16

examination: improvement in functioning. *Id.* During that time, Claimant stopped drinking and received treatment for depression. *Id.*

Regarding the rule-out diagnosis, Claimant has never received a diagnosis of an organic mild organic brain syndrome. Roseland progress notes do not even suggest Claimant has such a disorder and there are no symptoms to suggest an additional evaluation is necessary to determine Claimant's limitations. R. 271-84; *Carroll*, 291 F. Supp. 2d at 794 (holding that despite testimony of the ME that a supplemental exam could clarify a claimant's knee condition, the ALJ was not required to order an additional evaluation where the ALJ had a substantial amount of evidence relating to the knee). Further, during the two years, Claimant did not seek an additional evaluation despite receiving treatment at Roseland upon the advice of his attorney.

Moreover, the ALJ's RFC included accommodations for many of the limitations found by Dr. Levitan, an evaluation which everyone agrees was performed at Claimant's low point. Where there are no additional diagnoses and the change in a claimant's ability to work is an improvement, the ALJ is simply not required to order a new CE. The medical record shows that Claimant suffers from major depressive disorder and that he has received treatment and medication, both of which led his condition to improve over time. R. 229-84. In light of the Seventh Circuit standard set forth in *Kendrick* that the Court should defer to the ALJ's reasoned judgment, the Court finds that the ALJ made a reasonable assessment when she determined the medical record provided sufficient evidence upon which to base her decision and a supplemental CE was not required.

**B.** **The ALJ Did Not Selectively Use Evidence That Favored Her Ultimate Conclusion.**

Claimant argues that the ALJ erred in her evaluation of the evidence by selectively using comments from Claimant's medical records from Roseland. An ALJ may not "select and discuss only that evidence that favors [her] ultimate conclusion." *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). That is simply not the case here.

To the contrary, the Court finds the ALJ provided a detailed review of the entire medical record. The ALJ discussed both comments that report Claimant's depressive symptoms and his improvement. For example, the ALJ noted that the March 31, 2008 report stated Claimant "felt withdrawn from people, slept a lot, [and] did not want to leave the house." R. 15. In considering the progress notes from Roseland, the ALJ noted Ms. Todd's report that Claimant experienced anaerobia, feelings of helplessness and hopelessness, felt sad a lot of the time, and had problems sleeping through the night. R. 16. Finally, the ALJ also included Dr. Jones's opinion that Claimant "had mood symptoms of sadness, anxiety, changes in sleep patterns" and adhedonia. *Id.* In fact, the ALJ included all of the facts from the Roseland medical record that Claimant included in his Memorandum in Support of Plaintiff's Motion for Summary Reversal. Therefore, the ALJ did not selectively use comments from the record that only supported her ultimate conclusion.

**C.** **Substantial Evidence Supports The ALJ's Decision.**

Ultimately, substantial evidence included in the record supports the ALJ's RFC determination. The RFC is the maximum that a claimant can do despite his mental and physical limitations. *Craft v. Astrue*, 539 F.3d 668, 676-77 (7th Cir. 2008). The ALJ considers medical evidence, opinion evidence, and other evidence in determining the Claimant's RFC. 20 C.F.R. § 404.1545(a)(3). The ALJ determines how much weight to afford the doctors and must explain those decisions. 20 C.F.R. § 1527(d), (f). The ALJ must consider all mental and physical medically determinably impairments, even those not considered severe. 20 C.F.R. § 404.1545(a)(2), (b), (c).

In the case at bar, the ALJ found that Claimant has the residual functioning capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to perform simple, routine, repetitive tasks, with only occasional interaction with the general public, supervisors, and co-workers, and with no more than occasional changes in work routine and setting, and occasional kneeling, crawling, and stairs, with the allowance for being off-task 10% of the time with one absence per month, and with no strict production quotas." R. 17. Substantial evidence in the medical records supports this determination.

Where the record does not contain opinion evidence from a treating source, the ALJ may give substantial weight to the state agency reviewing physician opinion consistent with other medical evidence. *Goffron v. Astrue*, No. 11 C 2114, 2012 WL 1565317, *10 (N.D. Ill. May 2, 2012). Here, the record does not contain opinion evidence from a treating source. R. 19. In August 2006, Dr. Levitan opined: Claimant could perform simple and

routine tasks; he would have difficulty handling regular work pressure and stress; he could communicate with co-workers and a supervisor; and he could follow and understand instructions but could not be relied upon to retain them. R. 205. In the same month, Dr. Tomassetti, the state agency reviewing physician, found Claimant had moderate limitations in the ability to carry out detailed instructions, but that Claimant was not significantly limited in the ability to carry out very short and simple instructions. R. 220-23. Because Claimant was drinking heavily at the time of the meeting with Dr. Levitan, and Claimant's therapists and psychiatrist wrote that abstaining from alcohol, medication, and regular therapy led Claimant's condition to improve, the ALJ gave substantial weight to Dr. Tomassetti's opinion. R. 19. The ALJ evaluated Claimant's credibility, referencing inconsistent statements about his alcohol intake. R. 18. Further, the ALJ reasoned that "even at the beginning of treatment" Claimant could follow through on commitments. R. 19.

In addition, the ALJ took Dr. Levitan's opinions and Claimant's preferences into consideration in determining Claimant's RFC. The ALJ provided for significant functional restrictions such as performing simple, routine, repetitive tasks, no strict production quotas, and an allowance for being off-task ten percent of the time to address these limitations. R. 17. She also accommodated Claimant's "preference" to keep to himself by limiting his interaction with co-workers and supervisors. R. 18. Given the evidence of record, the improvement in Claimant's functioning, and the fact that the ALJ accommodated limitations

assessed at Claimant's low point, the Court concludes that substantial evidence supports the ALJ's RFC determination .

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court denies Claimant's motion for summary reversal or remand and grants the Commissioner's motion to affirm the Commissioner's decision.

SO ORDERED THIS 16th DAY of JULY, 2012.

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies Mailed To:**

Deborah Spector
Matt Gruca
Spector & Lenz, P.C.
20 East Jackson Boulevard
Suite 1650
Chicago, Illinois 60604

**Counsel for Plaintiff**

Eric S. Pruitt
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604

Cynthia A. Freburg
Assistant Regional Counsel
200 West Adams Street
Suite 3000
Chicago, Illinois 60606

**Counsel for Defendant**